# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

JODI JASMIN, ]
 ]
    Plaintiff(s), ]
 ]  CV-01-N-0562-S
vs. ]
 ]
MG BROADCASTING OF ]
BIRMINGHAM, INC., ]
 ]
    Defendant(s). ]

**ENTERED**
OCT 22 2001

## Memorandum of Opinion

### I. Introduction

The Court has for consideration defendant's Motion to Dismiss [Doc. 4], converted to a motion for summary judgment. The motion has been fully briefed and is ripe for decision. Upon due consideration, the motion will be granted.

### II. Statement of Undisputed Facts

Plaintiff Jodi Jasmin ("Jasmin") was employed by defendant MG Broadcasting of Birmingham ("MG") as a reporter. On September 1, 1999, MG filed a lawsuit against Jasmin in state court ("*Jasmin I*"), alleging breach of contract.[1] MG claimed Jasmin left her employment before the expiration of her contract. On October 22, 1999, Jasmin asserted counterclaims for breach of contract, fraud, and intentional interference with a contractual relationship. Her breach of contract claim was based on representations allegedly made to her prior to her employment that she asserted had not been kept by MG during her employment. In her fraud claim, she alleged MG suppressed information concerning the

---

[1]The facts pertaining to Jasmin I are gleaned from the parties' submissions.



terms and conditions of her position. Her third claim for intentional interference with a contractual relationship was founded on MG's interference with offers of employment from two other television stations. As one of her defenses to MG's claim of breach of contract, she plead estoppel, citing three other persons who MG allowed to breach their contracts without repercussions.

After consultation with counsel regarding the lawsuit, Jasmin decided to file a charge of discrimination with the EEOC on December 29, 1999. The EEOC notified Jasmin via letter on September 29, 2000, that because the EEOC was investigating whether it desired to sue on behalf of Jasmin, her right to sue letter would be issued after their determination. On October 26, 2000, Jasmin received notice that the EEOC had chosen not to sue and she would be issued a right to sue letter. Approximately one and one half months later, on December 11, 2000, the trial in *Jasmin I* began, and a day later, Jasmin's attorneys received her right to sue letter.

On March 5th of this year, Jasmin filed *Jasmin II* in this court, alleging national origin discrimination under Title VII and race discrimination under Title VII and 42 U.S.C. § 1981. In her description of each cause of action, Jasmin claims she was discriminated against "in the above-described actions," and subject to treatment different from Caucasians and persons of other national origins. Defendant then filed the motion at issue here, contending that Jasmin is precluded, under the principles of res judicata, from bringing her claims in this suit.

## III.    Discussion

"The Supreme Court has explained following 'a full and fair opportunity to litigate, [res judicata] protects [a party's] adversaries from the expense and vexation attending multiple lawsuits, conserves judicial resources, and fosters reliance on judicial action by minimizing the possibility of inconsistent decisions.' *Montana v. United States*, 440 U.S. 147, 153-54, 99 S. Ct. 970, 973-74, 59 L. Ed. 2d 210 (1979)." *O'Connor v. PCA Family Health Plan, Inc.*, 200 F.3d 1349, 1355 (11th Cir. 2000).

> In the Eleventh Circuit, a party seeking to invoke the doctrine [of res judicata] must establish its propriety by satisfying four initial elements: (1) the prior decision must have been rendered by a court of competent jurisdiction; (2) there must have been a final judgment on the merits; (3) both cases must involve the same parties or their privies; and (4) both cases must involve the same causes of action.

*Kaiser Aerospace & Elec. Corp. v. Teledyne Indus.*, 244 F.3d 1289, 1296 (11th Cir. 2001).[2]

"If all these elements are met, any claim that was or could have been adjudicated in the

---

[2]The defendant notes in its brief the conflicting precedent in the Eleventh Circuit as to whether the court should apply state or federal principles of res judicata. In a case involving a question of res judicata based on a previous federal lawsuit, the court wrote:

> Neither the parties nor the district court address whether state or federal principles of *res judicata* apply to the case at bar. Our precedents on this question appear to lead in two different directions. Compare *Precision Air Parts, Inc. v. Avco Corp.*, 736 F.2d 1499, 1503 (11th Cir.1984) (a federal court reviewing the preclusive effect of a prior federal judgment applies federal common law) with *NAACP v. Hunt*, 891 F.2d 1555, 1560 (11th Cir.1990) ("Federal courts apply the law of the state in which they sit with respect to the doctrine of res judicata."). As a result, the district courts have found themselves in some confusion. See e.g., *Jones v. New England Life Ins. Co.*, 974 F. Supp. 1476, 1479-81 (M.D. Ga. 1996) (describing these precedents). Since both federal and Georgia principles of *res judicata* require the cause of action in the first and second lawsuit to be the same, compare *Durbin*, 793 F.2d at 1549, with *Waldroup v. Greene County Hosp. Auth.*, 265 Ga. 864, 866, 463 S.E.2d 5, 7 (1995), we need not resolve the conflict to decide this appeal. We note the problem, however, in the hope that future litigants will consider and brief the issue.

142 F.3d 1354, 1356 n.1 (11th Cir. 1998). Fortunately, Alabama and the Eleventh Circuit apply the same test to determine if res judicata applies, so this court need not address this question. In Alabama, "'[t]he ... elements of res judicata are (1) a prior judgment on the merits, (2) rendered by a court of competent jurisdiction, (3) with substantial identity of the parties, and (4) with the same cause of action presented in both actions.'" *Old Republic Ins. Co. v. Lanier*, No. 1971340, 2000 Ala. LEXIS 477, at *15 (Ala. May 26, 2000).

previous action is precluded." *Wesch v. Folsom*, 6 F.3d 1465, 1471 (11th Cir. 1993).

In this case, both parties argue the fourth element: whether *Jasmin II* involves the same cause of action as *Jasmin I*. "'In determining whether the causes of action are the same, a court must compare the substance of the actions, not their form. It is now said, in general, that if a case arises out of the same nucleus of operative fact, or is based upon the same factual predicate, as a former action, that the two cases are really the same 'claim' or 'cause of action' for purposes of res judicata.'" *Kaiser*, 244 F.3d at 1297 (citation omitted).

> Among the factors relevant to a determination whether the facts are so woven together as to constitute a single claim are their relatedness in time, space, origin, or motivation, and whether, taken together, they form a convenient unit for trial purposes. Though no single factor is determinative, the relevance of trial convenience makes it appropriate to ask how far the witnesses or proofs in the second action would tend to overlap the witnesses or proofs relevant to the first. If there is a substantial overlap, the second action should ordinarily be held precluded. But the opposite does not hold true; even when there is not a substantial overlap, the second action may be precluded if it stems from the same transaction or series.

*Ragsdale v. Rubbermaid, Inc.*, 193 F.3d 1235, 1239 n.8 (11th Cir. 1999) (quoting Restatement (Second) of Judgements § 24(2) cmt. 6 (1980)).

The plaintiff argues that the court in *Jasmin I* made it very clear that discrimination claims were not included in the case. Moreover, although the three comparators in this case were discussed in the context of Jasmin's estoppel defense in *Jasmin I*, she did not depose them and defendant would have objected if she had tried to do so. Further, her counterclaims of breach of contract and intentional interference with contractual relations deal with actions taken by MG before and after her employment.

Although *Jasmin I* was not an employment discrimination case, it involved claims so related to the claims in this case that the claims in this case are precluded. First, the factual

allegations in Jasmin's counterclaim filed in state court and the Complaint filed in this action are almost identical. Second, the facts "form a convenient unit for trial purposes." The facts alleged in this case span from the hiring of Jasmin to her departure from defendant's employ, the same facts presented in state court and which constitute a compact unit of information. Third, in substance, the claims made in *Jasmin I* and *Jasmin II* are the same. The parties will have to present, again, the same witnesses and information presented in *Jasmin I*. For instance, Jasmin's attorney questioned the television station's General Manager at length about the three persons recently fired while under contract, the three comparators in this case. Additionally, the General Manager was questioned about his knowledge of Jasmin's desire to be released from her contract, and Jasmin testified about her experiences at the station, from start to finish.

Plaintiff also contends that if she had sought to add a Title VII claim in *Jasmin I*, defendant would have moved to dismiss the claim due to failure to exhaust administrative remedies because plaintiff would have requested her right to sue letter prior to the expiration of 180 days.[3] This is not necessarily true. She could have requested her right to

---

[3] Defendant appears to be asserting equitable grounds for the non-application of res judicata in the instant case. Not only, as discussed herein, does equity not apply in the instant case, the Supreme Court has clearly indicated that there is no exception to res judicata based on equity:

> "Simple justice" is achieved when a complex body of law developed over a period of years is evenhandedly applied. The doctrine of res judicata serves vital public interests beyond any individual judge's ad hoc determination of the equities in a particular case. There is simply "no principle of law or equity which sanctions the rejection by a federal court of the salutary principle of *res judicata*." *Heiser v. Woodruff*, 327 U.S. 726, 733, 66 S.Ct. 853, 856, 90 L.Ed. 970 (1946). The Court of Appeals' reliance on "public policy" is similarly misplaced. This Court has long recognized that "[p]ublic policy dictates that there be an end of litigation; that those who have contested an issue shall be bound by the result of the contest, and that matters once tried shall be considered forever settled as between the parties." *Baldwin v. Traveling Men's Assn.*, 283 U.S. 522, 525, 51 S.Ct. 517, 518, 75 L.Ed. 1244 (1931). We have stressed that "[the] doctrine of *res judicata* is not a mere matter of practice or procedure inherited from a more technical time than ours. It is a rule of fundamental and substantial justice, 'of public policy and of private peace,' which should be cordially regarded and enforced by the courts...." *Hart Steel Co. v.*

sue letter after the expiration of 180 days, still allowing her time to add a claim for Title VII in *Jasmin I*. Moreover, the Eleventh Circuit has held that "plaintiffs may not split causes of action to bring, for example, state law claims in one suit and then file a second suit with federal causes of action after receiving a 'right to sue' letter." *Jang v. United Technologies Corp.*, 206 F.3d 1147, 1149 (11th Cir. 2000). In one of the decisions discussed in *Jang*, *Brzostowski v. Laidlaw Waste Systems, Inc.*, 49 F.3d 337, 339 (7th Cir. 1995), Brzostowski filed suit in state court for discharge in violation of his employment contract. *Id.* at 338. Two years later, he filed an ADEA suit in federal court, alleging his employment was terminated because of his age. *Id.* Brzostowski also claimed he could not bring his ADEA claim in his first lawsuit because he lacked a right to sue letter. The Court of Appeals for the Seventh Circuit held the second suit was barred by res judicata and rejected Brzostowski's argument. The court wrote: "[A]s a practical matter, Brzostowski could have delayed the filing of his first suit or requested that the court postpone or stay the first case. What he cannot do, as he did here, is split causes of action and use different theories of recovery as separate bases for multiple suits." *Id.* at 339. The *Brzostowski* case is very similar to the case at bar. Jasmin could have asked the state court to stay the suit, so as mentioned above, she could have added the discrimination claims. And although Brzostowski was the

---

*Railroad Supply Co.*, 244 U.S. 294, 299, 37 S.Ct. 506, 507, 61 L.Ed. 1148 (1917). The language used by this Court half a century ago is even more compelling in view of today's crowded dockets:
> The predicament in which respondent finds himself is of his own making . . . . [W]e cannot be expected, for his sole relief, to upset the general and well-established doctrine of *res judicata*, conceived in the light of the maxim that the interest of the state requires that there be an end to litigation--a maxim which comports with common sense as well as public policy. And the mischief which would follow the establishment of precedent for so disregarding this salutary doctrine against prolonging strife would be greater than the benefit which would result from relieving some case of individual hardship." *Reed v. Allen*, 286 U.S., at 198-199, 52 S.Ct., at 533.

- 6 -

plaintiff in his case, Jasmin was a counter-plaintiff in her case.  To litigate Jasmin's Title VII/1981[4] case in this court would be to relitigate her state court case, counter to established principles of res judicata.

Done, this 22nd of October, 2001.

EDWIN L. NELSON
UNITED STATES DISTRICT COURT

---

[4]The defendants correctly point out that nothing stopped Jasmin from filing her 1981 claims in the state court action.

- 7 -